# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LOUIS SPRINKLE**, | : | CIVIL ACTION NO. 1:12-CV-0902 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **AMZ MANUFACTURING CORP., EPY INDUSTRIES, INC., BOXWOOD MANUFACTURING CORP., ST. PAUL STREET ASSOCIATES, INC.,** | : | |
| **Defendants** | : | |

## **MEMORANDUM**

Presently before the court is a motion (Doc. 27) for summary judgment of defendants AMZ Manufacturing Corporation ("AMZ"), EPY Industries, Inc. ("EPY"), Boxwood Manufacturing Corp. ("Boxwood"), and St. Paul Street Associates, Inc. ("St. Paul Associates") (collectively "defendants") against plaintiff Louis Sprinkle ("Sprinkle"). The motion has been fully briefed and is ripe for disposition.

## I.  **Factual and Procedural Background**

The present case arises out of a slip and fall suffered by plaintiff Louis Sprinkle at the defendants' facility in York, Pennsylvania. Sprinkle, a South Carolina truck driver, was making a scheduled delivery to defendants on January 28, 2011 when he fell, allegedly as a result of slippery conditions brought on by recent winter weather. (See generally Doc. 1).

Sprinkle arrived at the York facility at approximately 6:30 a.m. on the morning of his fall. (Deposition of Louis Sprinkle, Doc. 24, Ex. 1 at 16:21-24). It was cold and snowing. (Id. at 19:09-11, 70:01-05, 70:19-20). Sprinkle reported snow covering the defendants' parking lot and adjacent loading dock area, but he could not tell how much snow had accumulated. (Id. at 74:01-06, 76:15-21, 81:07-14). After moving his truck to the loading dock, Sprinkle went inside the defendants' facility while defendants' employee, Efrain Morales, unloaded its contents. Sprinkle returned to his truck approximately ten minutes later, (id. at 25:19-23), and attempted to depart the facility. He promptly realized that his truck was stuck. (Id. at 26:03-09). Sprinkle walked back into defendants' facility to seek help from Mr. Morales and another employee, Bernadette Miller. (Id. at 26:11-15). He grabbed a plastic shovel to help him chip away the ice and returned to his truck. (Id. at 26:20-25). By this time, Sprinkle had traveled approximately the same route between his truck and the facility four times, during which he neither saw nor felt ice in his path. (Id. at 36:04-25, 37:01-15, 40:22-25, 41:01-22).

Morales and Miller followed Sprinkle out of the facility after he reported that his truck was stuck. Morales described the loading dock area as having "a little bit of ice." (Deposition of Efrain Morales, Doc. 29, Ex. 3 at 13:08-18). Miller also noticed ice in the area. (Deposition of Bernadette Miller, Doc. 29, Ex. 2 at 20: 17-19). Following Sprinkle, Morales and Miller began to salt the loading dock area. (Id. at 17:22-24, 20:01-16). Miller asserts that she warned Sprinkle to wait until she was able to spread more salt, (Doc. 29, Ex. 2 at 56:02-08); apparently, neither Morales

2

nor Sprinkle heard the warning, (Doc. 24, Ex. 1 at 30:17-22; Doc. 29, Ex. 3 at 28:05-09). As they made their way to the truck, Sprinkle attempted to chip ice away from the tires, (Doc. 24, Ex. 1 at 26:20-25, 27:01, 27:10-16, 28:01-04, 43:04-14), but he found the shovel ineffective. As he moved to make way for Morales and Miller, Sprinkle slipped and fell. (Id. at 43:11-24). Accounts vary as to the precise location where Sprinkle fell, though parties agree that it was within several steps of the rear wheels of the truck. (Id. at 25:18-20, 32:23-24; Doc. 29, Ex. 2 at 23:12-19, 23:25, 24:01-04). Sprinkle reports that he did not see or feel ice in the area until he slipped. (Doc. 24, Ex. 1 at 71:17-20).

As a result of the fall, Sprinkle suffered multiple injuries, alleged to include a bimalleolar fracture of the right ankle requiring surgical repair, as well as permanent scarring, loss of range of motion and general interference with plaintiff's daily activities. (Doc. 1 at ¶ 15). He now seeks to recover for defendants' alleged negligence in maintaining the safety of their loading dock and parking lot.

## II. **Standard of Review**

Summary judgment is appropriate only when "there is no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the

3

non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a). Only if this threshold is met may yhe cause of action proceed. Pappas, 331 F. Supp. 2d at 315. Accordingly, the court will view the facts "in the light most favorable to the nonmoving party." Morton Intern., Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 679-80 (3d Cir. 2003) (internal quotation and citation omitted).

## III. **Discussion**

Defendants move for summary judgment on several grounds. First, they argue that the Pennsylvania "hills and ridges doctrine" shields them from liability for generally slippery conditions resulting from ice or snow. Second, they contend that even if that doctrine does not preclude liability in this case, Mr. Sprinkle assumed the risk of slipping and falling by repeatedly traversing an area he knew to contain slick conditions. Finally, defendants assert that Mr. Sprinkle owed a duty to himself to look where he was going, which he breached by failing to take proper precautions against slipping and falling. The court will address these arguments *seriatim*.

### A. **The Hills and Ridges Doctrine**

Pennsylvania law does not impose an absolute duty on property owners to keep their premises completely free of snow and ice at all times. Rinaldi v. Levine, 176 A.2d 623, 625 (Pa. 1962); see also Beck v. Holly Tree Homeowners Assn., 689 F. Supp. 2d 756, 762 (E.D. Pa. 2010); Mack v. AAA Mid-Atlantic, Inc., 522 F. Supp. 2d

4

539, 546 (E.D. Pa. 2007). The well-entrenched hills and ridges doctrine "protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." Helbing v. Wyndham Hotels & Resorts, LLC, No. 10-1117, 2011 U.S. Dist. LEXIS 13502, at *7 (M.D. Pa. Feb. 11, 2011) (quoting Morin v. Traveler's Rest Motel, Inc., 704 A.2d 1085, 1087 (Pa. Super. 1997)). In order to recover for a fall on an ice- or snow-covered surface, a plaintiff must prove: (1) that snow or ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such conditions; and (3) that it was the dangerous accumulation of snow and ice that caused the plaintiff to fall. Rinaldi, 176 A.2d at 78-79. This doctrine applies with equal force to both public and private spaces, see Wentz v. Pennswood Apartments, 518 A.2d 314, 316 (Pa. 1991), and has been applied to business invitees, Wilson v. Howard Johnson Restuarant, 219 A.2d 676 (Pa. 1966).

In the matter *sub judice*, defendants argue that Sprinkle has failed to provide evidence (1) that snow or ice had accumulated in the requisite ridges or elevations; (2) that defendants had actual or constructive notice of such accumulations; and (3) that the accumulations of snow and ice caused Sprinkle to fall. (Doc. 27 at ¶¶ 5-6). Sprinkle counters that the hills and ridges doctrine is inapplicable to the current case as the accumulations of snow and ice that allegedly caused Sprinkle to slip

5

were not "natural accumulations," but rather were the result of defendant's plowing or snow removal. (Doc. 32 at 4). Alternatively, Sprinkle argues that, should the hills and ridges doctrine apply, genuine questions of material fact remain with respect to each of the three prongs. (Id.)

Accordingly, the threshold question in this matter is whether the hills and ridges doctrine applies. The doctrine's liability shield is predicated on the assumption that ice and snow are a "natural phenomena incidental to our climate," Rinaldi, 176 A.2d at 625, and that "[t]o require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions of this hemisphere." Morin v. Traveler's Rest Motel, Inc., 704 A.2d 1085, 1087 (Pa. Super. 1997). Hence, the hills and ridges doctrine casts its protection only in cases where the snow and ice at issue are the result of "an entirely *natural* accumulation, following a recent snowfall." Bacsick v. Barnes, 341 A.2d 157, 160 (Pa. Super. 1975) (emphasis added); see also Tameru v. W-Franklin, L.P., No. 07-1965, 2008 U.S. Dist. LEXIS 68770, at *10-11 (E.D. Pa. Sept. 11, 2008). The doctrine does not apply where the hazard is a localized patch of ice, rather than the result of generally slippery conditions prevailing in the community. Tonik v. Apex Garages, Inc., 275 A.2d 296 (Pa. 1971); Williams v. Shultz, 240 A.2d 812 (Pa. 1968). Nor does it apply where the icy condition is "of artificial origin," caused by the defendant's neglect. Williams v. United States, 507 F. Supp. 121, 123 (E.D. Pa. 1981); Bacsick, 341 A.2d at 621 (finding the hills and ridges doctrine inapplicable where a plaintiff

6

slipped and fell on a snow bank "of artificial origin" that had been deposited as the result of street plowing); Ward v. Pittsburgh, 44 A. 2d 553 (1945).

In the case at hand, a genuine question of material fact exists as to whether the precipitation on which Sprinkle fell constitutes a natural accumulation. By plaintiff's own account, snow fell in the area of the defendants' facility on the day of his accident. (Deposition of Louis Sprinkle, Doc. 24, Ex. 1 at 71:01-05). Sprinkle testified that it was snowing "on and off" as he neared the defendants' York facility. (id. at 70:19-22). He also testified that the defendants' parking lot was covered with snow that morning, (id. at 76:15-21, 81:07-14), though he did not know the amount of snow on the ground at the time of his fall, (id. at 70:23-25, 71:01-05, 74:01-06; see also Doc. 29, Ex. 2 at 33:18-25, 34:01-10). Snowfall immediately prior to Sprinkle's fall would tend to favor the application of the hills and ridges doctrine. See Beck, 689 F. Supp. 2d at 765 (citing Harmotta v. Bender, 411 Pa. Super. 601 A.2d 837, 842 (Pa. Super. Ct. 1992) (applying the hills and ridges doctrine where "[a] layer of fresh snow, which had fall the day of the accident, covered a layer of packed snow and ice")). However, other witnesses did not report fresh snow. Efrain Morales and Bernadette Miller, employees of the defendants who were present at the time of the fall, did not note snowfall when asked about the presence of snow or ice, but testified that the area where Sprinkle fell was icy. (Deposition of Bernadette Miller, Doc. 29, Ex. 2 at 20: 17-19; Deposition of Efrain Morales, Doc. 29, Ex. 3 at 13:08-18).

Snowfall is not a necessary predicate to the hills and ridges doctrine; the accumulation of ice may likewise be grounds for applying the shield where it is a

7

result of natural processes. See <u>Beck</u>, 689 F. Supp. 2d at 765 (applying the hills and ridges doctrine where meteorological conditions on the date of the accident showed that the "natural cycle associated with temperature change" had led to the accumulation of ice) (citing <u>Casey v. Singer</u>, 93 A.2d 470, 472 (Pa. 1953)). Where, however, human intervention with the snow or ice has led to the dangerous accumulation, the law ceases to consider it within the ambit of the hills and ridges protection. <u>See</u> <u>Harvey v. Rouse Chamberlin, Ltd.</u>, 901 A.2d 523, 527 (Pa. Super. Ct. 2006); <u>Backsick</u>, 341 A.2d at 160. In <u>Harvey</u>, the court found that the hills and ridges doctrine did not shield the landowner from liability for black ice in their roadway, because it concluded that the ice had formed as a result of recent snow removal. <u>Harvey</u>, 901 A.2d at 527 ("Just as in <u>Bacsick</u>, the evidence . . . suggests that the condition of the land was influenced by human intervention. In other words, given . . . . interaction with the *snow via* plowing, the *ice* in this case could not have been 'the result of an *entirely natural* accumulation.'")(emphasis in original). <u>Cf.</u> <u>Beck</u>, 689 F. Supp. 2d at 764-66 (distinguishing its case from <u>Harvey</u> and applying the hills and ridges doctrine, on the grounds that ice formed not as the result of improper snow removal, but as the result of well-documented natural meteorological conditions that caused a plowed road to melt and re-freeze).

The present record raises a genuine question as to what extent individuals intervened at the defendants' facilities to clear snow and ice prior to Sprinkle's fall. Miller's testimony suggests that natural temperature changes may have contributed to icy conditions on the morning of the fall. When asked why she began to spread

salt in the loading dock area shortly before the fall, Miller replied "Winter when you have snow, you have warmth, you have a potential to have refreezing over the night hours when we are closed." (Doc. 29, Ex. 2 at 25:15-17.) This testimony is consistent with her statements to an insurance adjuster shortly after the accident: "What has happened is the path where the gentleman fell was clear. Everything was cleared that day before; but with some of the melting that had occurred during the day, I would say Thursday, and then it froze Thursday night . . . ." (Id. at 52: 20-25). These statements would tend to favor the court's approach in Beck, applying the hills and ridges doctrine in light of natural thawing and refreezing. See 689 F. Supp. 2d at 765. However, key to that decision was the defendants' proffer of extensive meteorological data reporting weather conditions that supported such a hypothesis. Id. In the instant matter, the summary judgment record contains very little weather data.

Miller's testimony supports alternative explanations of the icy conditions, to wit, that snow removal may have caused the icy conditions, as in Bacsick and Harvey. Miller noted several times that the area had been cleared the day before the accident. (Doc. 29, Ex. 2 at 52:21-22; see also id. at 33:21-22 (testifying that there was snow in the area of the fall that "was piled up from us shoveling and clearing the dock."). By the reasoning in Harvey and Bacsick, the snow removal efforts prior to the accident would render the icy accumulations "of artificial origin" and preclude the application of the hills and ridges doctrine, unless, as in Beck, the defendants could show that climate conditions were ripe for a natural thaw and

9

refreeze. Nevertheless, the ambiguity in the record evidence as to the condition of the accumulations, and the extent to which defendants intervened to remove any accumulations, raise genuine questions of material fact, which preclude the court from answering the threshold issue of whether the hills and ridges doctrine applies. The court will therefore deny summary judgment on these grounds.[1]

### B. Assumption of Risk

Defendants also contend that Sprinkle voluntarily assumed the risk of an open and obvious danger. (See Doc. 28 at 7). Under Pennsylvania law, a possessor of land is not liable to invitees for physical harm caused by an activity or condition on the land whose danger is known or obvious to them. Palenscar v. Michael J. Bobb, Inc., 266 A.2d 478, 480, 483 (Pa. 1970). A danger is considered obvious when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence and judgment." Carrender v. Fitterer, 496 A.2d 120, 123-24 (Pa. 1983) (quoting Restatement (Second) of Torts § 343A cmt. b). Defendants argue that Sprinkle was

---

[1] Even if the court were to apply the hills and ridges doctrine, there remain questions of fact as to the size and character of the accumulations. As noted *supra*, the parties present alternative accounts of the condition of the property at the time of the accident. Plaintiff emphasizes Miller's statement that "The truck area where the tractor was parked was bigger chunks of ice, hardened snow." (Doc. 30, Ex. 2, at 21:10-12). Defendants, by contrast, present Sprinkle's testimony that it was snowing, (Doc. 30, Ex. 1 at 70:23-25), and Morlaes's testimony that he witnessed "a little bit of ice" that was "flat" without any "grooves," (Doc. 29, Ex. 3 at 13:08-18). Neither party presents clear, undisputed evidence as to the size of the accumulations. Hence, there remain questions for the jury as to whether the accumulations in question were "of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon." Morin, 704 A.2d at 1088.

aware of icy conditions in the vicinity of the loading dock and the potential to slip and fall thereon, but proceeded to traverse the area nonetheless, and is therefore precluded from recovering for his injuries.

By Sprinkle's own admission, he was aware of snowy conditions in the defendants' parking lot and loading dock on the morning of his fall. (Doc. 24, Ex. 1 at 71:01-05). He also testified that he saw ice under the tires of his truck after he was unable to gain traction and depart the loading dock. (Id. at 26:07-09, 34:01-06). Sprinkle was also aware that, in his final trip to his truck, Miller and Morales had followed him out of the building and were spreading salt as they went (id. at 43:02-03). According to his deposition, however, this was the extent of plaintiff's knowledge of icy conditions. Sprinkle testified that, in the four trips he made between his truck and the defendants' facility, he did not see or feel any other ice or slick conditions on the path he traveled each of those four times. (Id. at 71:06-10 ("The only ice I really seen was up under the tires."); see also 33:12-20, 34:14, 37:13-15, 41:23-25-42:01). According to his sworn testimony, it was not until he fell that Sprinkle became aware of the icy conditions in his path of travel. (Id. at 72:01-20). This testimony conflicts with Miller and Morales's accounts that the loading dock area was generally icy. (See Doc. 29, Ex. 2 at 20:12-19; Ex. 3 at 13:09-13).

Defendants contend that Sprinkle's knowledge of the fresh snow, and the ice under his truck, along with Miller's alleged warning, prove the existence of an obvious danger. They argue that a reasonable person in the same position would extrapolate from these known conditions, the risk of slipping and falling in adjacent

11

areas. (Doc. 28 at 9). Defendants further contend that Sprinkle's four trips across the area where he fell should have made the risk particularly obvious. This is an issue for the fact finder. Pennsylvania law provides that the question of whether a danger was known or obvious is usually a question of fact for the jury, though the question may be decided by the court where reasonable minds could not differ as to the conclusion. Carrender, 496 A.2d at 124. In the matter at hand, there remains ample latitude for reasonable disagreement. As already noted, differing accounts of the nature and condition of the defendants' parking lot and loading dock area leave questions as to the danger they posed and how open or obvious that danger might have been. It is for the jury to consider the testimony and accord it weight. Moreover, although some courts have found that visitors assumed a risk by repeatedly traveling over icy conditions, plaintiffs in such cases were aware of the specific risk. See Freudenvoll v. Stavros, 49 Pa. D. & C. 4th 328 (C.P. 2000)(finding that the plaintiff, a patron, assumed the risk of harm when she became aware of an icy entryway upon entering the building, but nonetheless proceeded to traverse it when she later exited the building). By contrast, defendants here ask the court to conclude that a reasonable person would have perceived the danger in the plaintiff's path as a result of the generally wintry conditions, though plaintiff had not noticed ice on that path on his four previous trips. This distinct pattern leaves a significant question for the jury's consideration. Accordingly, the court will deny summary judgment on these grounds.

### C. Duty to Look Where One is Going

Defendants make a final argument that Sprinkle had a duty to look where he was walking and avoid obvious dangers, a duty which they claim he breached by proceeding across the loading dock while failing to take proper precautions against slipping. This argument is unavailing.

Pennsylvania law has held that "[i]f there is anything settled in the law of negligence in Pennsylvania, it is the duty of a person to look where he is walking and see that which is obvious." Lewis v. Duquesne Inclined Plane Co., 28 A.2d 925 (Pa. 1942); see also Krueger v. Flying J. Inc., No. 1:07-0339, 2008 U.S. Dist. LEXIS 33383 (M.D. Pa. Feb. 27, 2008). Defendants contend that "Mr. Sprinkle had a duty to take adequate precautions to see what was the condition of the parking lot area where he was walking and then standing . . . ." (Doc. 28 at 14). This argument is unpersuasive for a number of reasons. First, there is no indication here that Sprinkle was not watching where he was walking. Second, as noted *supra*, there remain significant questions of fact as to whether the danger at hand was in fact obvious. Finally, defendants' urging that Sprinkle should have "take[n] precautions to see what the condition" of the parking lot misconstrues the very nature of the law. The doctrine espoused in Lewis is a limited one. See Donlin v. J.J. Newberry Co., 466 A.2d 174, 176 (Pa. Super. Ct. 1983)("Although we agree with appellants' averment that pedestrians 'must look where they are going,' we will not hold them responsible for walking so tentatively as to detect nearly-latent defects. Such action exceeds the burden placed upon the ordinarily prudent man under these

13

circumstances.")(citations omitted). Accordingly, Lewis does not impose on invitees a duty to inspect a premises, but only to see those dangers which are readily apparent, i.e. in front of their eyes.

For the foregoing reasons, the court will deny defendants' motion (Doc. 27) for summary judgment. An appropriate order follows.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: May 29, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LOUIS SPRINKLE**, | : | **CIVIL ACTION NO. 1:12-CV-0902** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **AMZ MANUFACTURING CORP., EPY INDUSTRIES, INC., BOXWOOD MANUFACTURING CORP., ST. PAUL STREET ASSOCIATES, INC.,** | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 29th day of May, 2013, upon consideration of the motion (Doc. 27) for summary judgment by defendants AMZ Manufacturing Corp., EPY Industries, Inc., Boxwood Manufacturing Corp., and St. Paul Street Associates, Inc., and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion (Doc. 27) for summary judgment is DENIED.

        S/ Christopher C. Conner  
        CHRISTOPHER C. CONNER  
        United States District Judge